IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOHN HOWELL                                                                                                        PLAINTIFF

v.                                          Case No. 5:10CV00093 JLH

CARL A. REDUS, Individually and
as Mayor of the City of Pine Bluff, Arkansas;
and the CITY OF PINE BLUFF, ARKANSAS                                              DEFENDANTS

**OPINION AND ORDER**

John Howell was the chief of police of the City of Pine Bluff. Mayor Carl Redus fired him. Howell now sues Redus, individually and as Mayor of Pine Bluff, and the City of Pine Bluff, Arkansas, alleging employment discrimination on the basis of age and race in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, and sections 1981 and 1983 of Title 42 of the United States Code. Howell also alleges a claim for wrongful discharge under Arkansas law based on his contention that Redus fired him for refusing to agree to search for and seize guns without probable cause for a search. The defendants have moved for summary judgment, and Howell has responded. For the following reasons, the Court will grant defendants' motion for summary judgment as to the federal claims for age and race discrimination, and will decline to exercise supplemental jurisdiction over Howell's state-law claims.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears

the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Of course, "[b]ecause [employment] discrimination cases often turn on inferences rather than on direct evidence, [courts] are particularly deferential to the non-moving party alleging discrimination." *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir. 1996). The Eighth Circuit has cautioned that "[s]ummary judgment should seldom be granted in employment discrimination cases." *Peterson v. Scott Cnty*, 406 F.3d 515, 520 (8th Cir. 2005). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

**II.**

Howell, a white male, was hired as chief of police by the Pine Bluff Civil Service Commission in 2006. Later in 2006, the authority to hire and fire police and fire chiefs was reinvested in the mayor.[1]

As Howell has testified, Pine Bluff historically has had a high crime rate. It is undisputed that Redus and Howell disagreed as to how to address the high crime rate. They had numerous, animated meetings and discussions about the manner in which the police department should attempt to reduce crime, particularly violent crime. On March 8, 2010, Redus and Howell met, along with

---

[1] This power had been delegated to the Civil Service Commission in 1999.

three deputy police chiefs and an assistant to the mayor. The meeting apparently was precipitated by a recent random shooting that was reflective of the ongoing problem of violent crime in Pine Bluff. Redus expressed dissatisfaction with the police department's response to this ongoing problem. After some heated conversation, Howell made a statement to the effect that if Redus did not like the way he was doing his job then Redus could fire him. Redus accepted Howell's challenge and fired him. Howell was sixty-two years old when he was fired.

Subsequently, Redus employed as interim chief a sixty-one year old African American, whom Redus described as "an excellent, energetic, young man." Redus later hired a forty-eight year old African American woman as the permanent chief of police.

During his tenure as mayor, Redus has fired one other department head, also a white male, and hired a white male as a replacement. He has hired five department heads, three of whom were white and two of whom were African American. All of them were more than forty years old.

### III.

Howell brings federal claims for employment discrimination on the basis of age and race, and a state-law claim for wrongful termination in violation of public policy. The defendants have moved for summary judgment on all of these claims.

**A.   AGE DISCRIMINATION**

The ADEA prohibits employers from discriminating against employees age forty and over on the basis of their age. 29 U.S.C. §§ 623(a)(1), 631(a). Where, as here, the plaintiff presents no direct evidence of discrimination, "the case is considered under the three-phase, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Ward v. Int'l Paper Co.*, 509 F.3d 457, 460 (8th Cir. 2007); *see also King v. United States*,

553 F.3d 1156, 1162-63 (8th Cir. 2009). First, the plaintiff must establish a *prima facie* case of age discrimination. The burden then switches to the employer to articulate a legitimate, nondiscriminatory explanation for its conduct. Finally, the burden returns to the plaintiff who must demonstrate that the proffered justification was pretextual. *Ward*, 509 F.3d at 460. While the plaintiff's burden at the *prima facie* stage is minimal, "more substantial evidence of discrimination is required to prove pretext, because evidence of pretext is viewed in the light of [the employer]'s legitimate, non-discriminatory explanation." *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 992 (8th Cir. 2006).

To establish a *prima facie* case, Howell must demonstrate that he was (1) at least forty years old; (2) qualified for his position; (3) terminated; and (4) under circumstances giving rise to an inference of discrimination. *See* 29 U.S.C. § 631(a); *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007). The defendants concede that Howell was at least forty years old, was qualified, and was terminated. The fourth element can be satisfied by evidence that the plaintiff's replacement was "sufficiently younger to permit an inference of age discrimination." *Ramlet*, 507 F.3d at 1153. The defendants point out that Howell's immediate replacement was only one year younger than Howell. However, his immediate replacement served merely as interim chief. Howell's permanent replacement was fourteen years younger than Howell. This evidence is sufficient to satisfy the lenient burden of the *prima facie* case. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996) (replacement was sixteen years younger); *Carter v. City of Miami*, 870 F.2d 578, 583-84 (11th Cir. 1989) (*prima facie* case established when replacement was four years younger); *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1444 (11th Cir. 1985) (*prima facie* case established when replacement was fourteen years younger).

As noted above, it is undisputed that Redus and Howell had numerous meetings to discuss the high crime rate in Pine Bluff, and they disagreed as to the appropriate means for reducing the crime rate. At the meeting when the mayor fired Howell, Howell told Redus that initiatives designed to reduce the number of random shootings would take one year to implement. When Redus said he did not have a year, Howell said "if you don't like the way I'm doing my job, then fire me," or words to that effect. This exchange occurred in the presence of three deputy police chiefs and an assistant to the mayor. The evidence thus shows, without dispute, that Redus and Howell disagreed as to how to reduce violence in Pine Bluff. Likewise, the evidence shows, without dispute, that Howell challenged Redus to fire him and did so in the presence of the deputy police chiefs. The undisputed facts show that the mayor had a legitimate, nondiscriminatory reason for terminating Howell's employment.

Thus, the burden again rests upon Howell to present evidence raising a question of material fact as to whether Redus's stated reason for firing him is a pretext for age discrimination. Howell fails to meet this burden. Indeed, one of Howell's claims is that Redus fired him because he disagreed with Redus regarding policies for addressing violent crime in Pine Bluff. Howell says that Redus wanted him to direct Pine Bluff police officers to search for and seize guns without probable cause and that Redus fired him because he refused to adopt such a policy. By contending that he was fired because he would not adopt Redus's plan for removing guns from the streets, Howell admits that age was not the reason. *Grossman v. Dillard Dept. Stores, Inc.*, 109 F.3d 457, 459 (8th Cir. 1997) ("by contending that he was fired because he would not relocate, [the plaintiff] admits age was not the reason."); *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1337-38 (8th Cir. 1996) (plaintiff's contention that he was fired "because he chose to do the right thing" undercuts his claim of age

discrimination). *See also Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 264 (4th Cir. 2008) (plaintiff's acknowledgment that "he was fired to stop his internal investigation negates his claim of race and gender discrimination."). Here, it is undisputed that Redus and Howell had ongoing, serious disagreements as to how to address Pine Bluff's crime problem, that in the midst of one of those disagreements Howell challenged Redus to fire him in front of three deputy police chiefs, and that Redus accepted the challenge. With these facts being undisputed, Howell cannot show that the proffered reason for his termination is a pretext for discrimination based on age.

Howell points to the fact that Redus described the interim chief as "an excellent, energetic, young man." Because the interim chief was only one year younger than Howell, that statement is hardly evidence that Redus regarded Howell as too old for the job. Howell also testified that Redus regularly expressed an interest in hiring college graduates, which Howell understood to mean recent graduates. Again, that evidence does not tend to show that the defendants' proffered reason for terminating Howell is a pretext for age discrimination. *See Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007) (citing *Dillard*, 109 F.3d at 459 ("[t]hat Dillard recruits recent college graduates is not evidence it discriminates against older workers")).

Finally, Howell argues that the selection process for a permanent chief favored younger applicants over older ones, which Howell says shows that age was a motivating factor in the decision to terminate him. Suffice it to say that noting in the selection process for a permanent chief of police would permit a reasonable jury to conclude that the stated reason for Howell's termination was a pretext for age discrimination.

There is no genuine issue of material fact on Howell's claim of age discrimination. The defendants are entitled to summary judgment on that claim.

B. **RACE DISCRIMINATION**

The legal principles that govern Howell's age discrimination claim also govern Howell's claim that he was terminated because of his race. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873-74 (8th Cir. 2010); *Richmond v. Board of Regents of Univ. of Minn.*, 957 F.2d 595, 598 (8th Cir. 1992) (applying *McDonnell Douglas* burden-shifting approach to claims arising under "Title VII, section 1981, section 1983, [and] the ADEA[.]"). Again, Howell has presented no direct evidence that he was terminated on account of his race, so the *McDonnell Douglas* burden-shifting approach must be followed.

Howell is white, was qualified, and was terminated, which satisfies the first three elements of his *prima facie* case. *See Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004). Since both the interim and permanent replacements for Howell were African American, the fourth element of the *prima facie* case is also met. *Id.*; *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 944 (8th Cir. 1994) ("[P]roof of replacement by a person outside the protected class will satisfy the fourth element" of the *prima facie* case.). The defendants proffer the same legitimate, nondiscriminatory reason as above.

Hence, Howell must provide evidence that creates a fact question as to whether the stated reason for discharging him is a pretext for race discrimination. Howell offers evidence that during the 2008 election Redus directed an offensive racial slur at an African American candidate for alderman, calling him a "white man's n _ _ _ _ r."[2] Howell also says that Redus opposed hiring him as chief of police because he lived outside Pine Bluff, but Redus then hired an interim police chief

---

[2] Redus denies using such slur, but at the summary judgment stage the Court may not make credibility determinations and must view the facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

and a permanent one from other states. Howell said he "felt like that was entirely because of my race." Finally, Howell says that Redus once accused Howell of ethnic bias in a matter relating to a person of Pakistani descent. For reasons explained above, none of this evidence would permit a reasonable jury to conclude that Redus's stated reason for firing Howell was a pretext for unlawful discrimination. Howell, himself, claims that he was fired because he disagreed with the mayor as to how to address Pine Bluff's crime rate. Howell contends that Redus wanted him to pursue policies that were illegal and fired him because he refused to do so. Redus also says that he and Howell disagreed, though he denies asking Howell to violate the law. Even if Howell is correct that Redus fired him for refusing to adopt illegal policies, that fact still would undermine Howell's contention that Redus fired him because of his race. *Grossman*, 109 F.3d at 459; *Rothmeier*, 85 F.3d at 1337-38.

This case is really pretty simple: Howell and Redus argued repeatedly and heatedly over how to address crime. During one of those arguments, Howell said that if Redus did not think he was doing a good job Redus should fire him. The undisputed facts show that Redus did not think Howell was doing a good job. Redus therefore accepted Howell's challenge and fired him. This is not a race discrimination case.

There is no genuine issue of material fact on Howell's claim of race discrimination. The defendants are entitled to summary judgment on that claim.

C.  **STATE LAW CLAIMS**

Howell admittedly was an at-will employee. He nonetheless contends that his termination was illegal under state law because the Supreme Court of Arkansas has held that it is unlawful to discharge an at-will employee for reasons that violate the public policy of the State of Arkansas. *See*

*Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988). Because this Court has jurisdiction over Howell's employment discrimination claims, the Court has the authority to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(a) ("[I]n any civil action in which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy . . . ."). The district court may decline to exercise supplemental jurisdiction over a claim under section 1367(a) if the district court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Out of respect for the principles of federalism and for the courts of the State of Arkansas, the Court will exercise its discretion under section 1367(c) to decline to exercise supplemental jurisdiction with respect to Howell's state-law claims. *Cf. Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (stating that the district court should have declined pendant jurisdiction after dismissing the federal claims because of "the necessity to provide great deference and comity to state court forums to decide issues involving state law questions.").

The dispute here concerns a municipality organized under the laws of the State of Arkansas. The mayor and the chief of police of that municipality disagreed as to the manner in which the police department should combat crime, so the mayor fired the chief of police. The ultimate issue is whether the mayor violated the public policy of the State of Arkansas when he did so. It is for the courts of the State of Arkansas, not the federal courts, to decide whether the mayor's conduct in

firing the police chief violated the public policy of the State of Arkansas.  Therefore, the Court declines to exercise supplemental jurisdiction over Howell's state-law claims.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED. Document #37.  Howell's federal claims for employment discrimination based on age and race are dismissed with prejudice.  Howell's claims that arise under the laws of the State of Arkansas are dismissed without prejudice.

IT IS SO ORDERED this 17th day of December, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE